IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Carolina Catering Corp., <br><br> Plaintiff <br><br> v. <br><br> United States Department of Homeland Security, Aerostar Airport Holdings, LLC, and Roberto Jiménez-Soto; <br><br> Defendants. | **Civil No. 24-1095(GMM)** |

## OPINION AND ORDER

Before the Court is a request for legal clarification on whether federal regulations allow a resident non-citizen airport employee to retain his or her airport employee security clearance following the expiration of his or her Permanent Resident Card. Pending is Co-Defendant Aerostar Airport Holdings, LLC's ("Aerostar" or "Co-Defendant") *Motion to Dismiss*. (Docket No. 8). For the following reasons, the Court **GRANTS** Co-Defendant's motion and **DISMISSES** the claim against Aerostar **WITHOUT PREJUDICE.**

### I.   BACKGROUND[1]

Plaintiff Carolina Catering Corp. ("Plaintiff" or "Carolina Catering") is a Puerto Rican corporation which provides in-flight

---

[1] It should be noted that the factual background described by the Court is derived from the Complaint.

Civil No. 24-1095 (GMM)
Page – 2 –

catering services to commercial airlines at the Luis Muñoz Marín International Airport ("LMMIA"). (Docket No. 1 ¶ 2). Co-Defendant, the United States Department of Homeland Security ("DHS"), is the federal executive department charged with overseeing issues including terrorism, boarder security, and immigration. (Id. ¶ 3). The United States Transportation and Security Administration ("TSA") is a subsidiary government agency under the DHS responsible for managing security at airports and other transportation facilities in partnership with the Federal Aviation Administration ("FAA"). (Id. ¶ 4). Co-Defendant, Aerostar, is a private Puerto Rican company that governs the LMMIA under a public-private partnership agreement with the Puerto Rico Ports Authority ("PRPA") and oversees LMMIA employee security screening, training, and credentialing procedures pursuant to TSA, DHS, and PRPA regulations. (Id. ¶ 6, 22). Co-Defendant Roberto Jiménez-Soto ("Jiménez") is a non-citizen, resident of Puerto Rico, formerly employed by Plaintiff. (Id. ¶ 7).

In the past, Carolina Catering had resident non-citizen employees and candidates for employment, including Jiménez, who were issued airport security identification badges authorizing them to work at the LMMIA after complying with Aerostar's regulatory security requirements. (Docket No. 1 ¶ 49). Carolina Catering has also faced situations where resident non-citizen applicants for employment, who lacked a valid and unexpired

Permanent Resident Card, were deemed ineligible to work at LMMIA. (Id. ¶ 50). Moreover, historically there have been instances where Plaintiff's employees who are resident non-citizens met the requirements for the issuance of an airport security identification badge to work at LMMIA, but their Permanent Resident Card expired during their employment term. (Id. ¶ 51). On such occasions, Carolina Catering terminated such employees finding that they were no longer eligible to work at the LMMIA under applicable airport security regulations following the expiration of their Permanent Resident Cards. (Id.).

Plaintiff is currently engaged in legal proceedings in Puerto Rico State Court in the case Roberto Jiménez Soto v. Carolina Catering Corp., Civil No. CA2020-CV-00700. (Docket No 1. at ¶ 52). There, Jiménez claims that Plaintiff terminated him due to his national origin or social condition, after Carolina Catering found him ineligible to work at the LMMIA following the expiration of his Permanent Resident Card. (Id.). The trial court held that Jiménez was discriminated against, and the Puerto Rico Court of Appeals affirmed the decision. (Id. ¶ 52). On January 26, 2024, the Puerto Rico Supreme Court issued a writ of certiorari to review the lower court's ruling. (Id.); see also Puerto Rico Supreme Court Case No. CC-2023-733. Plaintiff, however, avers that "[t]he litigation in the Puerto Rico courts does not involve the same parties as this case and the Puerto Rico Supreme Court will not

Civil No. 24-1095 (GMM)
Page – 4 –

decide the issue presented before the Court and for which declaratory judgment is sought in this case." (Id. at 15).

On March 1, 2024, Plaintiff filed the Complaint. (Docket No. 1) ("Complaint"). Carolina catering seeks a writ of mandamus under the All Writs Acts ("AWA"), 28 U.S.C. § 1651(a) that orders DHS Secretary Alejandro Mayorkas "to take all necessary measures within the statutory authority granted to him to ensure compliance by Aerostar of a provision in the airport security program for LMMIA that expressly provides for the qualification, or lack thereof, for access to secure and sterile areas of the LMMIA of a resident alien who uses an expired resident alien card as a form of identification for employment or whose resident alien card expires while employed with access to secure and sterile areas of the LMMIA and does not provide a renewed resident alien card." (Id. at 17-18). Plaintiff also requests that the Court issue a declaratory judgment that "an expired Permanent Resident Card does not establish that a non-US Citizen is authorized for employment in the United States and, also is not a valid form or employment authorization to qualify for the issuance of an identification card or badge to work at the LMMIA" pursuant to the Declaratory Judgment Act ("DJA") 28 U.S.C. § 2201 et seq. and Fed. R. Civ. P. 57. (Id. at 1).

In short, Carolina Catering asks the Court to provide clarification on "the purely legal question of whether to enforce

security regulations for its employees working in the LMMIA or face litigation for discriminatory action resulting from the enforcement of the LMMIA rules established by the TSA and by Aerostar." (Id. ¶ 53). Plaintiff avers that it sought such clarification from the TSA and Aerostar but received no answer. (Id. ¶ 54).

On May 6, 2024, Aerostar filed its *Motion to Dismiss* requesting that the Court dismiss the Complaint without prejudice for lack of subject-matter jurisdiction on justiciability grounds or, in the alternative, for failure to state a claim. (Docket No. 8). Plaintiff filed their *Opposition to Defendant's Aerostar Airport Holdings LLC's Motion to Dismiss* ("Opposition") on May 28, 2024. (Docket No. 11). Carolina Catering, therein, contends that its allegations are not speculative and raise a plausible claim for a declaratory judgment on the employment security authorization procedures for non-U.S. citizens at the LMMIA. (Id. at 6). On June 20, 2024, Aerostar filed its *Reply to Opposition to Motion to Dismiss* ("Reply"). (Docket No. 16). Principally, Aerostar reiterates that Plaintiff failed to state a concrete claim upon which relief can be granted given that its claim relies "on past experiences to seek relief for future events." (Id. at 2).

## II.  LEGAL STANDARD

A. <u>Motion to Dismiss Standard Rule 12(b)</u>

A defendant may respond to an initial pleading with a motion to dismiss the complaint for a range of reasons including lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1) and 12(b)(6). "When faced with a motion to dismiss under both, 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." <u>Fernandez Molinary v. Industrias La Famosa, Inc.</u>, 203 F.Supp.2d 111, 114 (D.P.R. 2002) (internal quotations and citations omitted); *see also* <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946); <u>Dynamic Image Techs., Inc. v. United States</u>, 221 F.3d 34, 37 (1st Cir. 2000) ("As a general matter, trial courts should give Rule 12(b)(1) precedence.").[2]

"Pursuant to Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction." <u>Ironshore Indem. Inc. v. Villa Marina Yacht Harbor Inc.</u>, Civil No. 23-1370 (FAB), 2023 WL 6815125, at *2 (D.P.R. Oct. 17, 2023). "As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants." <u>Molina Viera v. Yacoub</u>, 425 F.Supp.2d 202,

---

[2] The Court finds that the present claim can be dismissed pursuant to Rule 12(b)(1) and thus, finds it unnecessary to address Co-Defendant's 12(b)(6) arguments.

Civil No. 24-1095 (GMM)
Page – 7 –

203 (D.P.R. 2006). The party asserting subject matter jurisdiction bears the burden of demonstrating its existence. *See* Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). In completing a 12(b)(1) analysis "[t]he court must take all the allegations in the complaint as true and determine if the plaintiff sufficiently evinced a basis of subject matter jurisdiction." Camara de Mercadeo, Industria y Distribucion de Alimentos, Inc. v. Emanuelli-Hernandez, Civil No. 21-1156 (RAM), 2021 WL 5605098, at *2 (D.P.R. Nov. 30, 2021), aff'd, 72 F.4th 361 (1st Cir. 2023) (*citing* Torres-Negron v. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007)).

"[I]f the Court determines, as a threshold matter, that subject matter jurisdiction does not exist, it must dismiss the case and not make any determination on the merits of the same." Menendez v. United States, 67 F.Supp.2d 42, 45 (D.P.R. 1999). "Under Rule 12(b)(1), dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable." Torres v. Bella Vista Hosp., Inc., 523 F.Supp.2d 123, 132 (D.P.R. 2007).

Under the Constitution of the United States, federal courts' jurisdiction is limited to actual cases and controversies. *See* U.S. Const. art. III, § 2; *see also* Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 239-41 (1937). To be justiciable, a case must present "a real and substantial controversy admitting

of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna, 300 U.S. at 241. It is blackletter law that federal courts are generally barred from issuing advisory opinions where a live ripe controversy does not exist. See Hall v. Beals, 396 U.S. 45, 48 (1969); Steir v. Girl Scouts of the USA, 383 F.3d 7, 16 (1st Cir. 2004); Mangual v. Rotger-Sabat, 317 F.3d 45, 59 (1st Cir. 2003) ("The constitutional inquiry, grounded in the prohibition against advisory opinions, is one of timing.") (internal citations omitted). Thus, "[i]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case." ACLU of Mass. v. U.S. Conf. of Cath. Bishops, 705 F.3d 44, 52-53 (1st Cir. 2013) (quoting Mangual, 317 F.3d at 60).

B.   DJA

The DJA grants a federal court the authority to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In determining whether declaratory judgment is appropriate, a court must consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech,

Inc., 549 U.S. 118, 127 (2007); see also Club Gallistico de Puerto Rico Inc. v. United States, 414 F.Supp.3d 191, 202-03 (D.P.R. 2019), aff'd sub nom. Hernandez-Gotay v. United States, No. 19-2236, 2021 WL 128466 (1st Cir. Jan. 14, 2021).

However, the DJA limits federal courts' judicial authority to issue declaratory judgments to "a case of actual controversy." 28 U.S.C. § 2201(a). The Supreme Court interprets a case of actual controversy under the DJA to mean "the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, Inc., 549 U.S. at 127 (citing Aetna, 300 U.S. at 240). Thus, "[t]he authority conferred on federal courts by the Declaratory Judgment Act, 28 U.S.C. § 2201, is likewise limited to controversies that are within the constitutionally-constrained scope of federal jurisdiction." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 403 F.Supp.3d 1, 9 (D.P.R. 2019) (citing Aetna, 300 U.S. at 240); see also Skelly Oil v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (In passing the DJA, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction."); Cooperativa de Ahorro y Credito TuCoop v. 3G Green Gold Grp. LLC, Civil No. 23-1301 (RAM), 2023 WL 7324696, at *2 (D.P.R. Nov. 7, 2023) (citing New England Patriots Fans v. Nat'l Football League, 2016 WL 3248207, at *2 n.2 (D. Mass. 2016)) ("the Declaratory Judgment Act cannot confer

subject matter jurisdiction in cases where it would not otherwise exist.")

C. <u>AWA</u>

The AWA empowers "all courts established by Act of Congress. . .[to] issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also* <u>United States v. One Urb. Lot Located</u>, Civil No. 93-1494 (DRD), 2009 WL 10660943, at *1 (D.P.R. Mar. 17, 2009). The Supreme Court has noted that the AWA "is a residual source of authority to issue writs that are not otherwise covered by statute." <u>Pennsylvania Bureau of Correction v. United States Marshals Service</u>, 474 U.S. 34, 43 (1985); *see also* 19 Moore's Federal Practice § 201.40 ("[A] writ may not be used. . .when another method of review will suffice."). Nevertheless, while the AWA "authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's [existing] jurisdiction." <u>Clinton v. Goldsmith</u>, 526 U.S. 529, 534 (1999) (*quoting* 28 U.S.C. § 1651(a)). Critically, the AWA is an "extraordinary remedy" that does not "enlarge" the Court's jurisdiction. <u>Id.</u> at 534-535.

### III.   ANALYSIS

Aerostar argues that the Complaint requests the issuance of a non-justiciable advisory opinion that is not ripe and thus, falls outside the confines if this Court's jurisdiction. (Docket No. 8

at 2). Co-Defendant stresses that Plaintiff's Complaint "seeks to clarify legal standards in anticipation of future possible conflicts rather than relief for a current conflict." (Docket No. 8 at 3-4). Consequently, according to Aerostar, the Complaint falls short given that it "lacks any well-pleaded, nonconclusory allegations of specific damages or specific consequences resulting from Aerostar's actions or inactions." (Docket No. 16 at 5). As such, Aerostar asserts that the lack of a concrete dispute, that does not depend upon contingent and uncertain future events, undermines the existence of a justiciable case that this Court has the power to resolve.

Conversely, Plaintiff avers that an actual controversy exists given that Carolina Catering faces "the decision of either employing the candidate, knowing that the form of identification presented will expire making him or her ineligible for employment in secure and sterile areas of the LMMIA or not employ the candidate of employment and expose itself to a discrimination claim." (Docket No. 1 at 18). In its Opposition, Plaintiff further emphasized that the "[c]ontroversies described in the Complaint regarding Aerostar's duty to ensure airport security, particularly, the issuance of airport security badges. . .adequately capture the current uncertainty faced by Carolina Catering." (Docket No. 11 at 10).

It is well settled that the DJA and AWA do not extend this Court's jurisdiction beyond the context established in Article III of the Constitution. *See* Skelly, 339 U.S. at 671; Clinton, 526 U.S. at 534. Thus, the Court's analysis centers on the question of whether a true controversy ripe for resolution exists between Carolina Catering and Aerostar.

For a claim to be justiciable, a plaintiff must raise an issue and seek relief in a manner that addresses a particular live controversy of the requisite immediacy and concreteness to warrant the issuance of a declaratory judgment or a writ. *See* Golden v. Zwickler, 394 U.S. 103, 108 (1969); al Odah v. United States, 62 F.Supp.3d 101, 111 (D.D.C. 2014) (having found that a claim was not yet ripe, the Court stated that "[i]n the absence of some other basis for jurisdiction, Petitioner is not entitled to the relief sought under the All Writs Act."). Furthermore, "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them. . .[W]hen the request is not for ultimate determination of rights but for preliminary findings and conclusions intended to fortify the litigant against future regulation, it would be a rare case in which the relief should be granted." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 300 F.Supp.3d 328, 337 (D.P.R. 2018),

aff'd, 919 F.3d 638 (1st Cir. 2019) (quoting Pub. Servs. Comm'n. of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952)).

In the instant matter, the Court finds that the Complaint does not establish a justiciable controversy between Carolina Catering and Aerostar. Plaintiff's claim is that it will, in the future, employ a job candidate whose Permanent Resident Card will expire resulting in Plaintiff being forced to either fall out of compliance with federal airport security regulations or be exposed to potential legal action for discriminatory termination. Based on the Courts reading of the filings, Plaintiff appears to contend that the issuance of a declaratory judgment and or a writ would compel Aerostar to enforce federal airport security regulations and thus prevent Plaintiff from facing the above suggested legal quagmire. However, Carolina Catering has failed to plead sufficient facts demonstrating that this case is sufficiently ripe for judicial resolution.

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 807-08 (2003) (citing Abbott Labs v. Gardner, 387

U.S. 136, 148-149 (1967) (abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977))) (internal quotations omitted). Unripe claims amount to impermissible advisory opinions. *See* Am. Tort Reform Ass'n v. Occupational Safety & Health Admin., 738 F.3d 387, 396 (D.C.Cir.2013) (Article III of the Constitution bars "courts from issuing advisory opinions on speculative claims.").

A claim is ripe when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506 (1972); *see also* Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 535 (1st Cir. 1995) (stating that a ripe controversy exists then the issue is final, definite, dependent on sufficiently developed facts, and the challenged action creates a 'direct and immediate' dilemma for the parties.") (citation omitted).

Here, Carolina Catering has failed to identify an immediate controversy ripe for adjudication. Critically, Plaintiff does not identify any current employee or potential employment candidate who is a non-citizen with a Permanent Resident Card that is expired or is about to expire, whose termination might potentially expose Plaintiff to legal action. In a ripeness analysis, "[t]he critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." Ernst & Young, 45 F.3d at

536 (*quoting* Mass. Ass'n of Afro-Am. Police, Inc. v. Boston Police Dep't, 973 F.2d 18, 20 (1st Cir.1992)). Here, a series of events would need to manifest for Carolina Catering to be forced to choose between (1) adhering to federal airport security regulations or (2) exposing itself to a potential future discrimination lawsuit for terminating an employee who lacked an unexpired Permanent Resident Card.

Moreover, Plaintiff fails to adequately plead that this Court's withholding of a judgment will pose a hardship to it by creating "a direct and immediate dilemma for the parties." Stern v. U.S. Dist. Court for Dist. Of Mass., 214 F.3d 4, 10 (1st Cir. 2000). Such an "inquiry encompasses the question of whether plaintiff is suffering any present injury from a future contemplated event." McInnis-Misenor v. Maine Med. Ctr., 319 F.3d 63, 70 (1st Cir. 2003) (*citing* Reg'l Rail Reorganiz. Act Cases, 419 U.S. 102, 143 (1974)). A party "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013). Carolina Catering did not indicate that it was suffering any present hardships, beyond its concern that it might be subject to future legal action if it chooses to employ a resident non-citizen with a Permanent Resident Card that might expire during such employee's term of employment. Thus, Plaintiff's worry that it may be subject to legal

action at some later date is insufficient to substantiate a present hardship that would make the claim ripe for adjudication.

In sum, the Complaint does not present a ripe justiciable controversy between Plaintiff and Aerostar. The Court accordingly lacks the judicial authority to hear the dispute and must dismiss the claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Co-Defendant's motion and **DISMISSES** the claim against Aerostar **WITHOUT PREJUDICE**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, July 2, 2024.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE
